```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

LEE R. ELLENBURG III, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS INDIVIDUALLY
SITUATED,                                       08 Civ. 10475 (JGK)

                    Plaintiff,                  OPINION AND ORDER

        - against -

JA SOLAR HOLDINGS CO. LTD., HUAIJIN
YANG, AND DANIEL LUI,

                    Defendants.
────────────────────────────────────────
LEI ZHANG, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED,

                    Plaintiff,
                                                08 Civ. 11366 (JGK)
        - against -

JA SOLAR HOLDINGS CO. LTD., HUAIJIN
YANG, AND DANIEL LUI,

                    Defendants.
────────────────────────────────────────
```

**JOHN G. KOELTL**, District Judge:

The plaintiffs, investors who purchased or otherwise acquired American Depository Shares of the China-based solar cell manufacturer JA Solar Holdings Co., Ltd. ("JA Solar") between August 12, 2008 and November 12, 2008 (the "class period"), bring these class actions against JA Solar, its Chief Executive Officer ("CEO") Huaijin Yang, and its Chief Financial Officer ("CFO") Daniel Lui alleging false statements and non-disclosures about the financial condition of the company during

1

the class period.  Both actions are brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), respectively, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  Putative class members Biao "Bill" Chen and Lee Chen move to consolidate the class actions and also make competing applications for appointment as lead plaintiff in the consolidated action and approval of their respective choices for lead class counsel.

I

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ."  Fed. R. Civ. P. 42(a).  Trial courts retain "broad discretion to determine whether consolidation is appropriate."  Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990).

Consolidation is plainly appropriate here.  The movants each seek consolidation and the motions to consolidate are unopposed.  The allegations supporting the claims asserted in each class action are almost identical.  Both actions turn on the allegation that JA Solar purchased a three month, $100 million note from a subsidiary of Lehman Brothers on or about July 9, 2008, when Lehman Brothers was under severe financial distress, and that the defendants failed properly to disclose

2

this investment and made misleading representations about the financial condition of the company in light of this investment beginning with a press release issued on August 12, 2008. On November 12, 2008, the defendants made full disclosure with respect to the effect of the investment on the financial condition of the company, and the price of the company's American Depository Shares plummeted. (Compare No. 08 Civ. 10475 Compl. ¶¶ 3, 23-38 with No. 08 Civ. 11366 Compl. ¶¶ 4-8, 18-29.)

The factual and legal questions to be resolved in the class actions appear to be indistinguishable, and no party has suggested otherwise. Accordingly, the Court will consolidate the two class actions. See Sofran v. LaBranch & Co., Inc., 220 F.R.D. 398, 401 (S.D.N.Y. 2004) (consolidating securities fraud class actions where both groups of plaintiffs requested consolidation and each action "assert[ed] essentially similar and overlapping claims brought on behalf of purchasers of [the defendant's] securities [during the class period] who purchased in reliance of the materially false and misleading statements and omissions at all relevant times").

II

There remains the question of who should be lead plaintiff in the consolidated class action. Bill Chen and Lee Chen each

3

seek appointment as lead plaintiff and approval of their respective choices for lead class counsel.  Bill Chen argues that he is the appropriate lead plaintiff because he has the greatest financial interest in the litigation based on his losses due to the defendants' conduct during the class period.  Lee Chen contends that Bill Chen actually enjoyed a financial gain and that his stated losses are based on incorrect accounting.[1]  Lee Chen also argues that Bill Chen's trading practices during the class period subject him to unique defenses that undermine his capacity to serve as lead plaintiff.[2]

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the district court must "appoint as lead plaintiff the member or members that the court determines to be most capable of adequately representing the interests of class members . . . ."  15 U.S.C. § 78u-4(a)(3)(B)(i)).  Pursuant to the PSLRA, the Court must adopt a presumption that the most adequate plaintiff is the person who "has the largest financial interest in the relief sought by the class . . . and . . . otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii); see

---

[1] Lee Chen's arguments about Bill Chen's accounting are raised for the first time in Lee Chen's reply brief in support of his motion for appointment as lead plaintiff.  The Court considered these arguments as well as the responsive arguments in Bill Chen's sur-reply brief on this subject.  Therefore, Bill Chen's motion for leave to file a sur-reply (Docket No. 29 in 08 Civ. 10475) is **granted**.

[2] A third putative class member, Wael Mahmoud Bahbahani, moved for consolidation and appointment as lead plaintiff (see Docket No. 9 in 08 Civ. 10475 and Docket No. 6 in 08 Civ. 11366), but later withdrew that motion.

also Hevesi v. Citigroup Inc., 366 F.3d 70, 81 (2d Cir. 2004) ("Two objective factors inform the district court's appointment decision: the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of [Federal Rule of Civil Procedure] 23."). That presumption may be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The PSLRA does not specify how a financial interest in the litigation is to be determined. "In determining which plaintiff has the greatest financial interest in the outcome of a securities litigation, courts have looked to four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered . . . ." In re eSpeed Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (internal quotation marks omitted). The dispute in this case revolves around the approximate losses suffered by the lead plaintiff movants because of the inventory of shares that Bill Chen held at the beginning of the class period and sold soon after the class period began.

Bill Chen claims to have lost $65,136 due to the defendants' alleged misconduct during the class period.  Lee Chen claims to have lost $39,801.  However, Lee Chen argues that Bill Chen overstated his losses by using the "First-In, First-Out" accounting method ("FIFO") while he should have used the "Last-In, First-Out" method ("LIFO").  Lee Chen contends that application of the LIFO method reveals that Bill Chen actually enjoyed a financial gain where he alleges a loss.

"In the context of a securities class action, FIFO and LIFO refer to methods used for matching purchases and sales of stock during the class period in order to measure a class member's damages."  In re AOL Time Warner, Inc., No. 02 Civ. 5575, 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006).  The Court of Appeals for the Second Circuit has not established a categorical rule for the appropriate measurement of losses where there is a pre-existing inventory of stock followed by purchases and sales during the class period.  "In this District, both FIFO and LIFO have been used to calculate the financial stake of movants for lead plaintiff status in securities class actions."  Id. at *18 (citing In re Veeco Instruments Inc. Sec. Litig., 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (applying FIFO), and In re eSpeed Inc. Sec. Litig., 232 F.R.D. 95, 100-02 (S.D.N.Y. 2005) (applying LIFO)).

The sole subject of the accounting dispute is Bill Chen's sale of 5,000 shares of JA Solar stock on August 20, 2008 that he purchased on July 17, 2008, before the class period.  Bill Chen sold the shares for $86,500 after purchasing them for $81,000.  (Mar. 13, 2009 Rudman Aff. Ex. A.)  The movants disagree with respect to how the proceeds from the August 20, 2009 sale should be accounted for in calculating Bill Chen's losses.  Bill Chen appears originally to have omitted these proceeds from his loss calculations under the FIFO method of accounting.[3]  (Feb. 2, 2009 Rosenfeld Aff. Ex. B.)  In subsequent briefing, however, Bill Chen argues that the difference between the proceeds from the sale and the purchase price for the shares sold – $5,500 – should be offset against his losses.  This would result in a loss total of $59,636.59, leaving him comfortably in the lead over Lee Chen with respect to his financial interest in the litigation.  (Mar. 13, 2009 Rudman Aff. Ex. A.)  Lee Chen contends that the proceeds from the August 20, 2008 sale should not be netted against the purchase price of the shares that were sold, because the purchase of the shares preceded the class period, which began on August 12, 2008.  Lee Chen argues that

---

[3]     "Under FIFO, a plaintiff's sales of defendant's shares during the class period are matched first against any pre-existing holdings of shares.  The net gains or losses from those transactions are excluded from damage calculations."  Johnson v. Dana Corp., 236 F.R.D. 349, 352 (N.D. Ohio 2006); see also In re Organogenesis Sec. Litig., 241 F.R.D. 397, 401-02 (D. Mass. 2007); Cortese v. Radian Group Inc., No. 07 Civ. 3375, 2008 WL 269473, at *5 (E.D.Pa. Jan. 30, 2008).

the Court should account for the proceeds from the August 20 sale by applying the LIFO method of accounting, which he argues would require offsetting the total proceeds from the sale against the cost of the last stock purchase within the class period.[4]  (See Lee Chen Reply Brief at 3 ("Since the LIFO method requires the last purchase made by the shareholder to be offset by his first sale proceeds, [Bill] Chen was required to include the 5,000 shares that he sold on August 20, 2008 to his total proceeds from his sales.").)  This method of accounting for the proceeds from the August 20 sale would result in a net gain for Bill Chen during the class period.  (Mar. 2, 2009 Brualdi Decl. Ex. 1.)

Lee Chen's arguments with respect to accounting for the proceeds from the August 20 sale ignore the reality of the financial transactions in this case.  The most accurate and realistic way to account for the gain realized from the August 20 sale is to subtract the purchase price of the shares sold from the proceeds of their sale, and to offset the resulting gain against Bill Chen's class period losses.  The actual cost basis for the August 20 sale is specifically identifiable in this case.  It would make no sense to calculate the gain

---

[4]     Under LIFO, "a class member's damages are calculated by matching the class member's last purchases during the class period with the first sales made during the class period." Bhojwani v. Pistiolis, No. 06 Civ. 13761, 2007 WL 2197836, at *7 (S.D.N.Y. June 26, 2007) (internal quotation marks and alterations omitted); see also In re AOL, 2006 WL 903236 at *17; Cortese, 2008 WL 269473, at *5.

8

achieved from the August 20 sale by pretending that the shares sold were purchased at any price other than the actual, specifically identifiable price for which they were in fact purchased.  To do so would "ignore[] the economic reality of a stock sale, which requires that the sales price for a share of stock be matched with that share's cost basis, in order to calculate a profit or loss on the sale of that share."  In re NPS Pharm., Inc. Sec. Litig., No. 06 Civ. 570, 2006 U.S. Dist. LEXIS 87231, at *7-8 (D. Utah Nov. 17, 2006) (rejecting argument that shares held prior to class period should be ignored).

The cases cited by Lee Chen do not suggest otherwise. Those cases counsel the adoption of the LIFO method of accounting as an alternative to the FIFO method.  Courts making this choice have explained that LIFO provides a more realistic estimate of a class member's losses than does FIFO, because LIFO accounts for gains attained through the sale of shares during the class period when share prices were inflated, while FIFO does not.  See, e.g., Johnson, 236 F.R.D. at 352; In re Pfizer, 233 F.R.D. 334, 337 n.3 (S.D.N.Y. 2005); In re eSpeed, 232 F.R.D. at 102.  However, this case does not present a choice between the LIFO and FIFO accounting methods, because simply offsetting the $5,500 profit from the August 20 sale against Bill Chen's class period losses accounts for any gain accruing to Bill Chen from the alleged inflation of share prices at the

9

time of that sale.  Thus applying LIFO is not necessary to account for Bill Chen's gain from the August 20 sale.  Put another way, the gain accruing to Bill Chen from his August 20 sale, including any portion of the gain resulting from inflation, can be accounted for by comparing the price at which the shares were sold with the price for which they were purchased – the actual, specifically identifiable cost basis for the sale – and offsetting the difference against Bill Chen's class period losses.  The movants' arguments with respect to LIFO and FIFO are therefore immaterial.[5]

For the foregoing reasons, Bill Chen has a greater financial interest in the litigation than Lee Chen, and he is therefore the plaintiff with the greatest financial interest in the litigation.[6]

Because Bill Chen is the plaintiff with the greatest financial interest in the litigation, he is entitled to a presumption in favor of his appointment as lead plaintiff if he otherwise satisfies the requirements of Federal Rule 23.  The specific provisions of Rule 23 that apply to the appropriateness of an individual class representative are that "the claims or

---

[5] There is no dispute with respect to the calculation of gains and losses throughout the rest of the class period.  The only dispute is how best to account for the proceeds from the August 20 sale.  Indeed, Bill Chen points out that applying either LIFO or FIFO to the purchases and sales during the class period results in a net loss of $59,636.59, providing that the initial sales proceeds of $86,500 are treated as a net gain of only $5,500.  (See Mar. 13, 2009 Rudman Aff. Exs. B & C.)

[6] Bill Chen and Lee Chen are the only two plaintiffs seeking appointment as lead plaintiff.

defenses of the representative parties are typical of the claims or defenses of the class; and . . . the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3) & (4); see also Jolly Roger Offshore Fund Ltd. v. BKF Capital Group, Inc., No. 07 Civ. 3923, 2007 WL 2363610, at *4 (S.D.N.Y. Aug. 16, 2007). "The typicality requirement is satisfied where a plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. In considering the adequacy of a proposed lead plaintiff, a court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation." In re SLM Corp. Sec. Litig., No. 08 Civ. 1029, 2009 WL 969934, at *3 (S.D.N.Y. Apr. 1, 2009) (internal citation omitted). At the lead plaintiff stage of the litigation, in contrast to the class certification stage, a lead plaintiff movant need only make a "preliminary showing that it satisfies the typicality and adequacy requirements of [Rule 23]." Id. (internal quotation marks omitted); see also Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008); Jolly Roger, 2007 WL 2363610, at *4 ("In fact, a wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for

class certification.") (internal quotation marks and alterations omitted).  Cf. In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006) ("[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met . . . such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement . . . .").  The defendants may of course challenge at the class certification stage whether each of the requirements of Rule 23 has been established.

     Bill Chen satisfies the typicality and adequacy requirements of Federal Rule 23.  Lee Chen makes no argument that Bill Chen's claim is not typical of the class, and such an argument would have no basis.  With respect to adequacy, although Lee Chen's argument that Bill Chen experienced a financial gain could be construed as an argument that Bill Chen lacks an interest in prosecuting the litigation, that argument is without merit for the reasons already discussed.  There is no allegation or reason to believe that Bill Chen's claims conflict with those of other class members.  Moreover, Bill Chen's choice of counsel – the law firm Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") – is qualified to prosecute this action.  (See February 2, 2009 Rosenfeld Aff. Ex. D.)  Therefore, Bill Chen satisfies the requirements of Federal Rule 23.

Because Bill Chen has the greatest financial interest in the litigation and otherwise satisfies the requirements of Federal Rule 23, he is entitled to a presumption in favor of his appointment as lead plaintiff.

Lee Chen attempts to rebut this presumption by arguing that Bill Chen is subject to a unique defense on the basis of his "in-and-out" trading during the class period.  According to Lee Chen, Bill Chen bought and sold JA Solar stock during the class period, subjecting him to a unique defense regarding loss causation and thereby rendering him unsuitable to serve as lead plaintiff.

Lee Chen's effort to rebut the presumption in favor of Bill Chen is unavailing.  First, any defense disputing loss causation on the basis of "in-and-out" trading would not be unique to Bill Chen, because Lee Chen, by his own admission, also engaged in such trading during the class period.  Cf. Montoya v. Mamma.com, Inc., No. 05 Civ. 2313, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) ("[I]n-and-out purchasers do not appear to be unique and, thus, render such plaintiff incapable of adequately representing the class . . . .") (internal quotation marks omitted).  Lee Chen attempts to distinguish Bill Chen's trading from his own by arguing that Bill Chen traded more often.  However, Lee Chen fails to support this distinction with any authority and Lee

Chen had three substantial sales of JA Solar stock during the class period.  (See Feb. 2, 2009 Brualdi Decl. Ex. 3.)

In any event, selling shares during the class period does not disqualify a class member from being appointed lead plaintiff.  See, e.g., Freudenberg v. E*Trade Fin. Corp., No. 07 Civ. 8538, 2008 WL 2876373, at *7 (S.D.N.Y. July 16, 2008); Montoya, 2005 WL 1278097, at *2 (declining to find in-and-out trading disqualifying based on possibility of loss causation defense where putative lead plaintiff acquired "substantial portion" of securities during class period and sold "substantial portion" after class period).[7]

For these reasons, Lee Chen's argument that Bill Chen should not be appointed lead plaintiff because he is subject to a unique defense lacks merit.  Bill Chen should therefore be appointed lead plaintiff of this consolidated action.

Bill Chen also moves for approval of Coughlin Stoia as lead counsel to the class.  As noted above, Coughlin Stoia is qualified to prosecute this litigation.  Therefore, Coughlin Stoia should be approved as lead class counsel.[8]  Cf. In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. 169, 175-76 (W.D.N.Y. 2006) (collecting cases).

---

[7] Lee Chen admits that Bill Chen purchased more shares than he sold during the class period.

[8] Because the Court is appointing Bill Chen as lead plaintiff and Coughlin Stoia as lead class counsel, it is unnecessary to address Bill Chen's argument that Lee Chen's chosen counsel is not qualified to serve as lead class counsel.

14

CONCLUSION

For all of the foregoing reasons, class actions Nos. 08 Civ. 10475 and 08 Civ. 11366 are consolidated. Bill Chen's motion for appointment as lead plaintiff and approval of lead plaintiff's selection of counsel is **granted**. Lee Chen's motion for appointment as lead plaintiff and approval of lead plaintiff's selection of counsel is **denied**. This consolidated action shall proceed with Bill Chen as the lead plaintiff and Coughlin Stoia as lead class counsel. The Clerk is directed to close Docket Nos. 3, 6, 9, and 29 in 08 Civ. 10475, and Docket Nos. 3 and 6 in 08 Civ. 11366.

SO ORDERED.

Dated:  New York, New York
        April 17, 2009

_____
John G. Koeltl
United States District Judge