```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
--------------------------------------
ELLENBURG, ET AL.,

                Plaintiffs,         08 Civ. 10475 (JGK)

      - against -              **MEMORANDUM OPINION
                                                               AND ORDER**

JA SOLAR HOLDINGS CO. LTD., ET AL.,

                Defendants.
--------------------------------------

**JOHN G. KOELTL, District Judge:**

    This is a securities action brought on behalf of a proposed class of investors in JA Solar Holdings Co., Ltd. ("JA Solar") pursuant to § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  The proposed class consists of the purchasers of American Depositary Shares ("ADS") of JA Solar between August 12, 2008 and November 12, 2008.  The plaintiffs' second amended complaint alleges that the defendants, JA Solar and three of its senior officers and directors, Huaijin Yang, Daniel Lui, and Baofang Jin (the "individual defendants"), violated § 10(b) and Rule 10b-5 by making materially misleading statements or omissions about JA Solar's financial position.  The plaintiffs also allege control-person liability against the individual defendants pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  The defendants move to dismiss the second amended complaint pursuant to Rules 12(b)(6) and 9(b) of the

Federal Rules of Civil Procedure and pursuant to the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Group LLC, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in

the complaint is inapplicable to legal conclusions." Id.; see also SEC v. Rorech, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Rorech, 673 F. Supp. 2d at 221.

II.

JA Solar is a China-based manufacturer of high-performance solar cells. The proposed plaintiff class in this case consists of purchasers of the American Depositary Shares ("ADS") of JA Solar between August 12, 2008 and November 12, 2008. (Compl. ¶ 1.)

On July 9, 2008, after raising $400 million through an offering of senior convertible notes, JA Solar purchased a $100 million note (the "Note") issued by Lehman Brothers Treasury Co. B.V. ("Lehman Treasury"), a Netherlands subsidiary of Lehman Brothers Holdings Inc. ("Lehman Brothers"). (Compl. ¶ 42.) The Note had a maturity date of October 9, 2008. (Compl. ¶ 42.)

The Note was supposed to have 100% principal protection and was guaranteed by Lehman Brothers. (Compl. ¶ 42.)

Lehman Brothers filed for bankruptcy on September 15, 2008. (Comp. ¶ 91.) In a November 12, 2008 press release, JA Solar announced that it had recorded a $100 million impairment adjustment as a result of Lehman Treasury's failure to pay the Note when it came due on October 9, 2008. (Compl. ¶ 106.)

The plaintiffs allege that the defendants made materially misleading statements or omitted material facts concerning JA Solar's financial position on two dates prior to the company's November 12, 2008 disclosure of the Note's default.

First, the plaintiffs point to statements made in an August 12, 2008 press release and in a conference call held on the same day that addressed JA Solar's second-quarter earnings for 2008. The press release indicated that JA Solar's "cash and cash equivalents sequentially increased" to approximately $520 million as a result of the closing of the $400 million of convertible notes. (Compl. ¶ 65.) The press release also stated that "the Company has a high level of cash on hand." (Compl. ¶ 70.) The press release did not mention the company's purchase of the Lehman Treasury Note. During a conference call held the same day, defendant Lui was asked about the company's "dollar exposure" and whether the company had any "hedge." (Compl. ¶ 78.) Mr. Lui responded that instead of using a hedge,

4

the company had "used the short-term investments . . . to manage the exposure." (Compl. ¶ 78.)  Mr. Lui went on to say that "we have engaged Credit Suisse, Lehman Brothers and Citigroup to help manage our cash." (Compl. ¶ 78.)  He then mentioned the $400 million in cash raised from the convertible notes and said "these funds have invested our cash in some capital protected funds, to help boost the return of those cash that are not used." (Compl. ¶ 78.)

Second, the plaintiffs point to statements made by the defendants in a September 16, 2008 press release and in a conference call held that day that addressed Lehman Brothers' bankruptcy announcement the day before.  The press release disclosed to JA Solar investors for the first time that the company owned the $100 million Note and stated that it was "issued by Lehman [Treasury], guaranteed by Lehman [Brothers]." (Compl. ¶ 92.)  The release advised investors of the maturity date of the Note—October 9, 2008—and stated that the Note had "100% principal protection." (Compl. ¶ 92.)  The release stated that Lehman Treasury was not, at the time, the subject of insolvency proceedings. (Compl. ¶ 92.)  Defendant Lui was quoted as saying that "[t]he agreements in question are with affiliates of Lehman Brothers Holdings Inc., some of which have not filed for bankruptcy protection." (Compl. ¶ 92.)  Mr. Lui's statement also advised investors that "we do not foresee that

5

these financial transactions with Lehman Brothers will impact our 2008 and 2009 outlook." (Compl. ¶ 92.)

In a conference call on the same day, Mr. Lui reiterated that Lehman Treasury "is not presently the subject of insolvency proceedings." (Compl. ¶ 97.) Mr. Lui also stated that, with regard to the Note, there is "supposed to be principal protection, and it's a three-month long. At the end of the three months, there will be principal and interest returned to us." (Compl. ¶ 101.) When an analyst participating in the conference call asked Mr. Lui if the Note was guaranteed by any entity, Mr. Lui stated that it was guaranteed by Lehman Brothers. (Compl. ¶ 103.) The analyst then asked, "It actually has filed bankruptcy right? It's not technically, I guess, accurate when you said that the issue[r] has not filed bankruptcy but is a shell company." (Compl. ¶ 103.) Mr. Lui said, "It had filed for Chapter 11. So it's still operating." (Compl. ¶ 103.) The analyst then clarified that his understanding was that "Lehman [Treasury] is basic[ally] a shell company that's ultimately being backed by Lehman Brothers, Inc., which is the company that filed Chapter 11." (Compl. ¶ 103.) Mr. Lui responded, "That part again I don't know because when we purchased the investment, Lehman [Treasury] was unrated, which the Lehman [Brothers] with Standard & Poor[']s were great." (Compl. ¶ 103.) The analyst then said, "Right, right. If

6

Lehman [Treasury] had been a shell company, no ability to repay, it will have recourse back to Lehman Brothers, Inc., which is under the liquidation provision right now." (Compl. ¶ 103.) Mr. Lui responded, "Yes." (Compl. ¶ 103.)

On November 12, 2008, the last day of the proposed class period, JA Solar issued a press release announcing that it had to record a $100 million impairment charge for the value of the Lehman Note. (Compl. ¶ 106.) On the day of the announcement, the price of JA Solar's ADS dropped by 28.7%. (Compl. ¶ 115.)

### III.

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). The SEC's Rule 10b-5 states that it "shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). To state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury

7

to the plaintiff.  Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000).

An omission is actionable under federal securities laws "only when the [defendant] is subject to a duty to disclose the omitted facts."  In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993).  Even though Rule 10b-5 imposes no duty to disclose all material, nonpublic information, once a party chooses to speak, one has a "duty to be both accurate and complete."  Caiola v. Citibank, N.A., N.Y., 295 F.3d 312, 331 (2d Cir. 2002).  "[E]ven an entirely truthful statement may provide a basis for liability if material omissions related to the content of the statement make it . . . materially misleading."  In re Bristol Myers Squibb Co. Sec. Litig., 586 F. Supp. 2d 148, 160 (S.D.N.Y. 2008).

In this case, the defendants argue that they did not make any materially misleading statements or omissions in the statements made in August and September 2008.  The defendants argue that they had no duty to disclose the existence of the Lehman Treasury Note in August 2008 and that, with regard to their September 2008 statements, they met any then-existing duty by disclosing information about the Note and its guarantee by Lehman Brothers.

With regard to the August 12, 2008 statements, the plaintiffs have alleged facts stating a claim that defendant Lui

made at least one misleading statement.  In response to a
question concerning JA Solar's "dollar exposure" during the
August 2008 conference call, Mr. Lui stated that JA Solar had
"engaged Credit Suisse, Lehman Brothers and Citigroup to help
manage our cash."  (Compl. ¶ 78.)  The plaintiffs allege that
whatever JA Solar's engagement of Lehman Brothers to manage its
cash, JA Solar had actually purchased a $100 million Note from
Lehman Treasury, which was guaranteed by Lehman Brothers.  Mr.
Lui's statement was allegedly misleading, not because Mr. Lui
failed to disclose any possible financial risk inherent in the
Note, but because his statement allegedly misrepresented how JA
Solar's cash was invested and the truthful nature of JA Solar's
relationship with Lehman Brothers.  Once Mr. Lui chose to speak
concerning JA Solar's cash investments, and indeed concerning
the company's relationship with Lehman Brothers, he had a "duty
to be both accurate and complete."  Caiola, 295 F.3d at 331.

With regard to the September 16, 2008 statements, JA
Solar's statements in the press release were also allegedly
misleading because, while the company disclosed that Lehman
Brothers was the guarantor of the Note, it understated the
effects of Lehman's bankruptcy.  The press release assured
investors that the Note had "100% principal protection" without
stating that any possible protection was provided solely by the
bankrupt Lehman Brothers.  (Compl. ¶ 92.)  This left open the

9

possibility that the Note was fully protected in some other way than being guaranteed by Lehman Brothers.  Indeed, it is difficult to understand how JA Solar could have assured investors that the Note was fully protected when the only protection was provided by a company in bankruptcy.  The release also emphasized that Lehman Treasury was a separate entity from Lehman Brothers and that it had not filed for bankruptcy.  (Compl. ¶ 92.)  The release concluded that JA Solar did not expect its "financial transactions with Lehman Brothers" to impact the company's financial position.  (Compl. ¶ 92.)

The defendants argue that Mr. Lui clarified the full effect of Lehman Brothers' bankruptcy in a conference call also held on September 16, 2008.  To the extent the defendants argue that Mr. Lui's conference call statements rendered JA Solar's prior alleged misrepresentations immaterial under a "truth-on-the-market" defense, their argument is not persuasive.  In order for a corrective disclosure to make a prior misstatement immaterial pursuant to the "truth-on-the-market" defense, the corrective information must be conveyed "'with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by' the alleged misstatements."  Ganino, 228 F.3d at 167 (quoting In re Apple Computer Sec. Litig., 886 F.2d 1109, 1116 (9th Cir. 1989)).

During the conference call, only after being asked by an analyst, Mr. Lui discussed the fact that Lehman Brothers, the guarantor of the Note, was in bankruptcy and that Lehman Treasury's recourse on the Note would be to the bankrupt Lehman Brothers.  (Compl. ¶ 103.)  The defendants argue that as a result of Mr. Lui's statements, investors understood the full effects of Lehman Brothers' bankruptcy on the Note's guarantee provisions.  However, during the same conference call, Mr. Lui continued to assert that the Note had "principal protection" and that JA Solar would have principal and interest returned to it.  (Compl. ¶ 101.)  In light of the September 16, 2008 press release's omission of the effects of Lehman Brothers' bankruptcy, and its focus on the fact that Lehman Treasury was a separate entity and not in bankruptcy, whether Mr. Lui's conference call statements effectively counterbalanced JA Solar's prior statements is a factual question that cannot be resolved on a motion to dismiss.  See, e.g., Ganino, 228 F.3d at 167 ("The truth-on-the-market defense is intensely fact-specific and is rarely an appropriate basis for dismissing a § 10(b) complaint . . . .").  The plaintiffs have pleaded sufficient facts, at this stage, to call into question whether Mr. Lui's statements cleansed the allegedly misleading effects of JA Solar's prior statements and omissions.

To fulfill § 10(b) and Rule 10b-5's materiality requirement, a plaintiff must show a substantial likelihood that a statement or omission "significantly altered the 'total mix' of information made available," as viewed by the "reasonable investor." Basic, Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)). A complaint cannot be dismissed for lack of materiality unless the statements in question "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Goldman, 754 F.2d at 1067. In this case, with the exception of their "truth-on-the-market" defense, the defendants do not argue that their alleged misstatements or omissions were immaterial and the Court cannot say that the statements and omissions were so unimportant that the complaint could be dismissed on that basis. Indeed, JA Solar had to write the entire Note off and, when it announced that fact, the price of its ADS dropped by 28.7%. (Compl. ¶ 115.)

A plaintiff may satisfy the scienter requirement of § 10(b) and Rule 10b-5 by alleging either: (1) facts constituting strong circumstantial evidence of a defendant's conscious misbehavior or recklessness; or (2) facts demonstrating that a defendant had the motive and an opportunity to commit fraud. In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 74 (2d Cir. 2001).

"[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000).

In this case, defendant Lui, the company's chief financial officer, plainly knew in August 2008 that JA Solar had not simply engaged Lehman Brothers to manage its cash, but rather that JA Solar had purchased the $100 million Note from a Lehman Brothers affiliate and that the Note was guaranteed by Lehman Brothers. Moreover, the defendants also knew, in spite of their statements in September 2008 that the Note had 100% principal protection and that they expected the principal and interest to be returned, that Lehman Brothers was the only guarantor of the Note and that Lehman Brothers was, in fact, in bankruptcy. The defendants' knowledge of these facts, in contradiction of their allegedly misleading public statements, satisfies the scienter requirements of § 10(b) and Rule 10b-5 at this stage.

To establish loss causation, as required by § 10(b) and Rule 10b-5, a plaintiff must plead "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005); see also Dura Pharm., Inc. v. Broudo, 544 U.S. 336

(2005).  In their reply brief, the defendants raise the argument that because the plaintiffs' loss coincided with marketwide losses in late 2008, and the bankruptcy of Lehman Brothers, the plaintiffs have not adequately pleaded that their losses were caused by the defendants' allegedly misleading statements and omissions.  See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) ("[W]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases.").  However, the plaintiffs have made the plausible allegation that the defendants' misstatements caused JA Solar's value to be artificially inflated until the company finally disclosed the complete effects of Lehman Brothers' bankruptcy—namely, the Note's default.  (Compl. ¶ 127.)  Under the plaintiffs' theory, their losses were exaggerated by the fact that the defendants did not fully disclose, prior to the Note's default, information about JA Solar's relationship with Lehman Brothers and the effects of Lehman Brothers' bankruptcy on the Note.  Therefore, the plaintiffs have adequately alleged that the defendants' conduct caused the plaintiffs' loss.

The only argument by the individual defendants against control-person liability pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), is that the plaintiffs have not shown a

14

primary violation of § 10(b) and Rule 10b-5.  Because there are sufficient allegations of underlying liability, as discussed above, the plaintiffs' control-person liability claims against the individual defendants cannot be dismissed.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is **denied**.  The Clerk is directed to close Docket No. 47.

SO ORDERED.

Dated:	New York, New York
	May 17, 2010

					_____
					John G. Koeltl
					United States District Judge